UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| SHELBY JUANITA BREWER, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) NO. 2:17-CV-39 |
| vs. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the United States Magistrate Judge under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's Disability Insurance Benefits and Supplemental Security Income applications under Social Security Act, Titles II and XVI (the "Act") were denied after a hearing before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). Plaintiff filed a Motion for Judgment on the Pleadings [Doc. 13]. Defendant filed a Motion for Summary Judgment [Doc. 15] to which Plaintiff filed a response [Doc. 17].[1]

**I.     APPLICABLE LAW – STANDARD OF REVIEW**

A review of the Commissioner's findings is narrow. The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed with the relevant legal standards. 42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind

---

[1] Local Rule 5.1 requires that all motions and other papers presented for filing must be double-spaced. Plaintiff's motion and response are noncompliant with this requirement. The Court will resolve the substantive motions in lieu of striking these filings, however.

might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human Servs.,* 802 F.2d 839, 841 (6th Cir. 1986). A Court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the Court were to resolve factual issues differently, the Commissioner's decision must stand if substantial evidence supports it. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). But, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007). The Court may consider any evidence in the record regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001).

A claimant must be under a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation applies in disability determinations. 20 C.F.R. §§ 404.1520 & 416.920. Review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

2

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

The claimant has the burden to establish an entitlement to benefits by proving the existence of a disability under 42 U.S.C. § 423(d)(1)(A). *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). The Commissioner has the burden to establish the claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## II. RELEVANT FACTS AND PROCEDURAL OVERVIEW

### A. Procedural History

Shelby Juanita Brewer ("Brewer") was a younger person at the time of her applications. 20 C.F.R. §§ 404.1563 & 416.963. She alleged an onset date of August 5, 2009, and had insured status through December 31, 2014. (Doc. 9, Transcript pp. 18, 20) (reference to "Tr" and the page denote the administrative record). She alleged several impairments she believed to be disabling.

Brewer's claims were initially denied in April 2014 and upon reconsideration in August 2014. (Tr. 18). An ALJ conducted a hearing on January 5, 2016. Brewer and a vocational expert testified. (Tr. 39-57). The ALJ followed the five-step analysis in evaluating the claims. The ALJ found Brewer had severe medical impairments, including osteoporosis, curvature of the spine, medullary sponge kidney, degenerative disc disease, and history of syncope. (Tr. 20). However, the ALJ ultimately made the dispositive finding that she was not disabled. The findings were:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014;

2. The claimant has not engaged in substantial gainful activity since August 5,

2009, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*);

3. The claimant has the following severe impairments: osteoporosis, curvature of the spine, medullary sponge kidney, and history of syncope (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with standing and walking limited to no more than two hours total in an eight-hour workday; occasional pushing and pulling; no climbing ladders/ropes/scaffolds; occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching or crawling; and no concentrated exposure to vibration or to hazards.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on July 16, 1967 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963)[2];

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)); and

---

[2] The claimant's age at the time of the decision, rather than age of as of the application date, governs in applying the Social Security regulations. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777 (6th Cir. 1987). Use of the application date here is harmless error as Brewer remained a younger person under the regulations at the time of the Decision.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 5, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 20-30).[3] The Appeals Council denied Plaintiff's review request. (Tr. 1).

**B.     Evidence in the Record**

The ALJ summarized the evidence. (Tr. 20-25). Brewer's brief [Doc. 14] does not include an overview of the record evidence; the Commissioner's brief reviews the record in detail [Doc. 16, pp. 3-11]. The transcript contains the reports of the consulting medical examiner and state agency reviewers who addressed Brewer's physical and mental conditions. (Tr. 58-70, 88-113, 533-38). Reference to the evidence is only set forth herein as necessary.

**III.    ANALYSIS**

Brewer asserts three errors. First, she urges the ALJ erred in finding that she has the residual function capacity to perform light work. Next, she argues that the Commissioner failed to satisfy the burden of proof at step five, specifically that work exists in significant numbers in the regional or national economy. Lastly, she asserts that a conflict exists between the Vocational Examiner's ("VE") testimony and the Dictionary of Occupational Titles and that the VE's testimony that one does not exist is inadequate. The Commissioner opposes Brewer's motion and seeks summary judgment on the basis that substantial evidence supports the ALJ's Decision.

**A.     Residual Functional Capacity**

Residual functional capacity ("RFC") is the most a claimant can do despite physical and mental limitations resulting from impairments. *See* 20 C.F.R. §§ 404.1545(a) &416.945(a). The responsibility for determining a claimant's RFC rests with the ALJ. *See* 20 C.F.R. §§ 404.1546(c) & 416.946(c).

Brewer maintains the ALJ erred in finding that she has the RFC to perform light work. In

---

[3] A discussion follows many of the findings. Such discussion is not repeated here unless necessary.

particularly she urges that limitation to standing and walking no more than two hours total in an eight-hour workday does not comport with 20 C.F.R. §§ 404.1567 (b) & 416.967(b). These regulations provide that a claimant must be able to do "a good deal of walking or standing" to perform light work. She further argues that SSR 83-10 notes that "a job is in the [light] category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs." While Brewer does not allege that the ALJ should have determined she has the RFC to perform sedentary work, this is the only logical alternative in the absence of a challenge to the ALJ's preceding findings under the sequential analysis.

Upon determining an RFC, the ALJ must address whether the claimant has the RFC to perform her past relevant work under step five. If not, the ALJ must determine whether significant numbers of other jobs exist in the national economy that the claimant can perform. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

Here, the ALJ called a VE to provide testimony at Step Five in the sequential process. The VE was asked to assume a hypothetical younger person with a limited education and previous work experience is only capable of performing work of light exertion with standing and walking limited to no more than two hours total in an eight-hour workday. The person is further limited to occasional pushing, pulling, stair and ramp climbing, balancing, stooping, kneeling, crouching and crawling and is prohibited from climbing ladders, ropes or scaffolds and concentrated exposure to vibration or hazards. In response, the VE testified that such a claimant would be precluded from returning to past relevant medium, semi-skilled work. (Tr. 54-56). The ALJ then asked the VE whether there would be other jobs such a claimant could perform in the regional or national economy. When the VE sought clarification as to whether the ALJ sought information about light or sedentary work, the ALJ limited the VE to addressing sedentary work. The VE then identified

three categories of jobs and the numbers of such jobs available in the regional and national economies.

By limiting the VE to testifying about available jobs for a hypothetical person with an RFC to perform sedentary work, the ALJ effectively found that Brewer had a sedentary RFC and reached a determination thereon in the Decision. Finding a claimant has a light RFC while applying a sedentary RFC is, for all practical purposes, the same as finding a sedentary RFC. For this case, it is distinction without a difference. Therefore, to the extent that the ALJ may have erred in finding that Brewer has the RFC to perform light work, such error was harmless as it was cured by the limitation of the VE testimony to a sedentary RFC.

**B.     Conflicts in Dictionary of Occupational Titles and Vocational Examiner Testimony**

Brewer asserts that "unexplained discrepancies" exist between the VE's testimony and Dictionary of Occupational Titles ("DOT") and the VE's affirmation that her testimony was consistent with the DOT was insufficient. Brewer specifically argues that the requirements for the inspector and sorter jobs identified by the VE, but not the clerk job, exceed the physical restrictions the ALJ adopted with the RFC finding when the DOT codes are compared to an O*Net Crosswalk Code. She asserts this inconsistency is particularly important with relation to the restrictions which limit Brewer to standing and walking no more than two hours in an eight-hour workday, prohibit climbing ladders, scaffolds and ropes and prohibit concentrated exposure to vibrations and hazards. With regard to vibrations or contaminants, Brewer argues that some inspector and sorter jobs involve use of conveyor belts that would expose her to vibrations and hazards.

Notably, Brewer alleges no error with regard to the interview or information clerk occupation that the VE testified a claimant with her limitations can perform. Instead, she limits her grounds for error to the sorting and inspector occupations. The availability of the clerk occupation alone supports the ALJ's Decision and renders purported errors as to consistency

7

between the DOT and VE testimony regarding sorter and inspector occupations immaterial. The Court will, nevertheless, address Brewer's allegations of error.

First, Brewer's brief wholly fails to cite the particular online source relied upon to support the discussion of an "O*Net Crosswalk Code" and ratings and rankings for various tasks which are purportedly applicable to the jobs identified by the VE. Multiple online sources provide O*Net information. This leaves the Court with no ability to review the particular source relied upon by Brewer to assess the substantive content and determine if a conflict is evident or to confirm that the source is reliable or applicable. Relief is not warranted simply based upon the *ipse dixit* of the claimant.

Next, as the Commissioner aptly notes, the DOT descriptions list a range of jobs within particular occupational categories. Not every job within an occupational title requires all of the tasks and duties identified in the DOT descriptions. The Sixth Circuit has recognized this: "[T]he DOT's job classifications are collective descriptions of 'occupations' that can encompass numerous jobs." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (citing S.S.R. 00-4p and S.S.R. 96-9p explaining that "[a]n 'occupation' refers to a grouping of numerous individual 'jobs' with similar duties"). In other words, the occupational titles identified by the VE include a range of jobs with varying duties. While a single job within an occupational category may not readily comport with the RFC and limitations of a claimant, the entire category is not necessarily precluded. Brewer offers no basis to exclude entire occupational categories.

With regard to conflicts between a VE's testimony and the DOT, SSR 00-4P provides that an ALJ should "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the . . .[DOT] . . .." The ALJ's duty is satisfied if the ALJ asks the VE whether his or her testimony is consistent with the DOT.

*See Martin v. Comm'r of Soc. Sec.,* 170 F.App'x 369, 374 (6th Cir. 2006). Further, an ALJ "is not required to affirmatively 'conduct an independent investigation into the testimony of witnesses to determine if they are correct.'" *Johnson v. Comm. of Soc. Sec.*, 535 F.App'x 498, 508 (6th Cir. 2013) (quoting *Martin*, 170 F.App'x at 374). An ALJ also does not need to address how a conflict is resolved where a claimant fails to call attention to the potential conflict. *Martin*, 170 F.App'x at 374.

Here, the ALJ offered Brewer's counsel the opportunity to question the VE. (Tr. 57). Counsel declined to do so. *Id.* Before concluding the hearing, the ALJ asked the VE whether her testimony was consistent with the DOT and she confirmed it was. *Id.*

Contrary to Brewer's contention that "simply ask[ing] the vocational expert if her testimony was consistent with the DOT" was insufficient, the ALJ acted in accordance with Sixth Circuit authority by making the consistency inquiry. The ALJ was not required to investigate further given the response and the conspicuous absence of any effort by Brewer's counsel to question the VE about *any* topics, including conflicts between the testimony and the DOT. Unlike many claimants, Brewer was also given an additional opportunity to address a conflict since the ALJ left the record open for thirty days following the hearing at Brewer's request to allow her to supplement the exhibits. (Tr. 39). While such exhibits are presumably unrelated to consistency between the DOT and VE testimony, the record nevertheless remained open and supplementation on this topic could have occurred. The Transcript reveals no post-hearing effort to supplement.

Next, authority in this and other circuits indicate it is inappropriate to allow a claimant to challenge uncontradicted VE testimony as to consistency after the administrative process has concluded:

> Claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous

provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Carey v. Apfel*, 230 F.3d 131, 147 (5th Cir. 2000) (affirming ALJ's determination and noting a VE's clear and unchallenged testimony was adequate); *see also McKinney v. Astrue*, 2012 WL 2603659 at *9 (E.D. Ky. 2012) (quoting *Carey v. Apfel,* 230 F.3d at 147 regarding claimant's failure to cross examine the VE or object to VE testimony). Simply stated, Brewer cannot now complain about the existence of a conflict after she failed to address the purported conflict with the ALJ or via the VE's testimony and declined to supplement the record following the hearing.

The Court finds the ALJ's Decision is in accordance with the applicable authority and substantial evidence exists to support the determination that the VE's testimony was consistent with the DOT.

**C.     Work Exists in Substantial Numbers**

Brewer claims the ALJ erred in finding that the number of jobs that exist in the national economy that she can perform is significant. She asserts error with regard to the job categories identified and, particularly, the single category of information or interview clerk.

Under step five, the ALJ must determine if significant numbers of jobs exist in the national economy which the claimant can perform. Both the Act and regulations address this topic. The Act provides that "work which exists in the national economy means work that exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). The regulations explain the "significant numbers" requirement:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs.

20 C.F.R. §§ 404.1566(b) & 416.966(b).

The Sixth Circuit offers further guidance. First, "[t]here is no bright line boundary separating a 'significant number" from an insignificant numbers of jobs. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). The Sixth Circuit has identified factors that can be considered in determining if a number is significant, including the level of claimant's disability, the reliability of the vocational expert's testimony, the reliability of the claimant's testimony, the distance the claimant is capable of traveling to engage in the assigned work, the isolated nature of the jobs, and the type and availability of the work. *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988). These factors are, however, "*suggestions . . . the ALJ need not explicitly consider each factor*," and the Act and regulations "make it clear that the test is whether work exists in the national economy, not in the plaintiff's neighborhood." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (emphasis added).

Here, the VE testified that a hypothetical claimant with a sedentary RFC and the multiple limitations described by the ALJ could perform the jobs of information or interview clerk, inspector or sorter. (Tr. 56). The VE testified the number of such jobs in the regional economy ranged from 275 to 375 and from 18,500 to 28,300 in the national economy. *Id.* With regard to the information or interview clerk position, the VE testified there are 325 jobs regionally and 28,300 nationally. *Id.*

In finding that the numbers of jobs identified were significant, the ALJ addressed the suggested factors. The ALJ first determined that Brewer's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible. (Tr. 26). This determination relates to the reliability of the claimant's testimony under *Hall*. The ALJ also noted the level of Brewer's disability by referencing each of her limitations and the light RFC that was adopted. (Tr. 29). (As discussed above, the ALJ adopted a light RFC, but only relied upon VE

11

testimony addressing a sedentary RFC. The ALJ's reference to a light RFC in Decision paragraph 10 remains harmless error in light of the clear reliance upon a sedentary RFC.) This demonstrates the ALJ's consideration of Brewer's level of disability.

While the ALJ did not expressly address the reliability of the VE's testimony, the record reveals that Brewer stipulated to the VE's qualifications and did not seek clarification regarding the testimony or otherwise challenge the testimony. (Tr. 40, 57). Likewise, if Brewer felt that the jobs identified are unavailable or isolated or the distance she might have to travel to work could impact the number of jobs, she did not evidence such concern with questions to the VE. The ALJ had little reason to analyze the reliability of the VE's testimony given the stipulation to qualifications and absence of any question to the VE or challenges to the testimony.

With regard to the numbers of jobs identified, extensive authority discusses the numbers that satisfy the threshold of "significant." There is no "magic number" for determining the amount of jobs that constitute significant work in the national economy, but there are various cases within the Sixth Circuit that indicate as few as 200 regional jobs and 6,000 jobs in the national economy are sufficient. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902 (6th Cir. 2016) (6,000 in national economy jobs "fits comfortably" within what courts have found significant); *Martin v. Comm'r of Soc. Sec.*, 170 F.App'x 369, 375 (6th Cir. 2006) (870 regional jobs constitutes significant work); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F.App'x 574, 578-79 (6th Cir. 2009) (finding 2,000 jobs significant); *Putnam v. Astrue*, 2009 WL 838155 (E.D. Tenn. Mar. 30, 2009) (finding 200-250 regional jobs and 75,000 national jobs constitute a significant number).

In light of the foregoing discussion of the *Hall* factors and the case law discussing the amount of jobs that satisfy the significant number criteria, the Court finds substantial evidence

supports the ALJ's determination that the numbers of jobs identified by the VE for each job category standing alone and combined are significant.

IV. **CONCLUSION**

Based upon the foregoing, the Court finds substantial evidence exists to support the ALJ's decision. Accordingly, the court RECOMMENDS that Plaintiff's motion for judgment on the pleadings [Doc. 13] be DENIED and the Commissioner's motion for summary judgment [Doc. 15] be GRANTED for the reasons stated herein.[4]

SO ORDERED:

s/ Clifton L. Corker
UNITED STATES MAGISTRATE JUDGE

---

[4]Any objections to this Report and Recommendation must be filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).